# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

MARK P. RILEY,

       Plaintiff,

v.                             Case No: 2:20-cv-312-SPC-NPM

EQUIFAX INFORMATION
SERVICES, LLC,

       Defendant.

_____/

## <u>OPINION AND ORDER</u>[1]

Before the Court are the parties' cross Motions for Summary Judgment (Docs. 54; 57) and related briefing (Docs. 58; 61; 62; 63; 70; 71). The Court grants in part Defendant Equifax Information Services, LLC's Motion and denies Plaintiff Mark Riley's Motion.

## BACKGROUND

This is a Fair Credit Reporting Act ("FCRA") case. Riley took out one mortgage (the "Debt"). At some point, the Debt transferred to Ocwen Loan Servicing, LLC for servicing. Eventually, Riley learned the tradeline for the

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

Debt appeared twice on his credit report. This made it look like he had two mortgages on the property.

Equifax prepares credit reports. In late 2018, Riley contacted Equifax about reporting issues. After investigating, Equifax sent Riley a letter explaining the changes it made (the "2018 Letter"). The 2018 Letter showed two identical tradelines for the Debt. Then, in 2019, Riley reached out to Equifax again—this time disputing the duplicate tradelines. Equifax failed to notify Ocwen of the dispute. After investigating, Equifax did not delete either tradeline and mailed Riley another letter (the "2019 Letter"). The 2019 Letter explained the tradeline was not reporting as a duplicate. It also showed differences between the tradelines.

As a credit reporting agency ("CRA"), Equifax has policies and procedures in place for credit reporting and investigating disputes. Specifically, it has procedures for dealing with duplicate tradelines. Under Equifax's policy, tradelines are not duplicates unless they have the same (1) creditor name; (2) account number; (3) open date; and (4) high credit amount. In the 2019 Letter, the tradelines reflected different open dates (among other differences). So, the tradelines would not be considered a duplicate under the policies.[2]

---

[2] The policies are mostly explained in an Equifax employee's declaration. Riley's attempts to dispute these facts fall well short. Riley merely says the declaration is "conclusory." Not so.

During the case, Riley voluntarily dismissed his claim against Ocwen. (Doc. 15). Then, the Court bifurcated discovery on liability and damages. (Doc. 40). The parties finished discovery on liability. Now, Riley and Equifax each move for judgment on the issue.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a

---

The declaration recites a host of information about Equifax's general policies. Those are not unsupported conclusions. Nearly all are admissible facts based on personal knowledge showing the declarant competent to testify. *See* Fed. R. Civ. P. 56(c)(4). Ironically, Riley's challenge is itself conclusory. It seems Riley demands corroborating evidence—but that isn't required. *United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018). Equifax apparently provided its policies confidentially in discovery. And Riley had a chance to depose declarant about the policies. The Court, however, will disregard any legal conclusions. *Torres-Bonilla v. City of Sweetwater*, 805 F. App'x 839, 840 (11th Cir. 2020). Likewise, to the extent that the declaration addresses the handling of Riley's dispute, it is largely not considered. The declaration did not show declarant's personal knowledge of how an independent contractor worked the file. So she cannot testify on those matters except for identifying information in documents she reviewed.

genuine dispute. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2018). At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

When (as here) the parties file cross summary judgment motions, these principles are unchanged. *Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). The only difference is that courts must take care to view the facts most favorably to the nonmovant for each motion. *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

## DISCUSSION

To start, the parties agree Equifax is a CRA under FCRA. With that issue decided, the Court tackles each of Riley's claims before turning to his challenge on Equifax's affirmative defense.

### A. Credit-Reporting Claim

First, Riley contends Equifax violated FCRA by reporting duplicate tradelines for the Debt.

When preparing consumer reports, CRAs must "follow reasonable procedures to assure maximum accuracy of the information." 15 U.S.C. § 1681e(b). "To state a claim for a violation of FCRA section 1681e(b) a plaintiff must allege: (1) the CRA published an inaccurate consumer report to a third

party; (2) in publishing its consumer report, the CRA failed to follow reasonable procedures to assure the maximum possible accuracy of the consumer report; and (3) the plaintiff suffered actual damages as a result of the CRA's failure to follow reasonable procedures." *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1335-36 (S.D. Fla. 2011).

The parties seem to agree reporting both tradelines could be inaccurate or at least misleading. *See Erickson v. First Advantage Background Servs.*, 981 F.3d 1246, 1251-52 (11th Cir. 2020) (holding "that to reach 'maximum possible accuracy,' information must be factually true and also unlikely to lead to a misunderstanding"). Deciding "whether a report is misleading is an objective measure." *Id.* And reporting both identical tradelines was "objectively likely to cause" someone reviewing Riley's report to believe he had two mortgages. *See id.* Indeed, Riley attests one mortgage lender specially came to that conclusion and denied his application. So reporting both tradelines did not meet maximum possible accuracy.

Yet the fact Riley's report contained inaccurate or misleading information does not end the analysis. "FCRA does not make [CRAs] strictly liable for all inaccuracies, but instead creates a private right of action for negligent or willful violations of the FCRA." *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 745 (11th Cir. 2020). While those standards are different, both theories demand consumer show CRA failed to follow

reasonable procedures when preparing a consumer report. *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937, 947 (11th Cir. 2021).

### 1. Consumer Reports

Before turning to the merits, it is necessary to resolve the parties' disagreement about the 2018 Letter. The parties disagree whether it was a consumer report.

The 2018 Letter showed identical tradelines for the Debt. Equifax sent the 2018 Letter as part of a reinvestigation, which specified several updates to the tradelines. Because the tradelines were identical, they appear to meet the criteria for a duplicate entry that Equifax should not have reported on a consumer report. Yet as Equifax counters, the 2018 Letter was not itself a consumer report. So at most, the 2018 Letter reflected Equifax had duplicative information in Riley's file. But this does not suggest that information was part of any consumer report.

To be sure, after a reinvestigation, CRA must send consumer an updated consumer report along with the reinvestigation results. 15 U.S.C. § 1681i(a)(6)(B)(ii); *Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768, 772 (11th Cir. 2006). Some decisions grappled with whether the reinvestigation

report itself is a consumer report under FCRA.[3]   In other words, they state communication to a third party is not a prerequisite for a consumer report.

The Court need not weigh in for several reasons.  Most importantly, Riley has not argued a consumer report need not be communicated to a third party. Nor did Riley allege the 2018 Letter was the consumer report underlying his claims.  *See generally* (Doc. 45).  In effect, Riley tries to amend his Complaint through summary judgment briefing.  That's a no-no.  *E.g.*, *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 859 (11th Cir. 2020) (The "plaintiff cannot amend her complaint through argument made in her brief in opposition to the defendant's motion for summary judgment." (cleaned up)).  What's more, binding and persuasive authority disagrees with any argument Riley impliedly made.  *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015) ("A 'consumer report' requires communication to a third party, while a 'file' does not."); *see Losch*, 995 F.3d at 944; *Cahlin*, 936 F.2d at 1158.[4]  For those reasons, the Court need not wade into this unsettled issue.

---

[3] *Mintun v. Equifax Info. Servs., LLC*, No. 2:19-cv-00033-JAD-NJK, 2021 WL 1601505, at *2-7 (D. Nev. Apr. 23, 2021); *Ashcraft v. Welk Resort Grp., Corp.*, No. 2:16-cv-02978-JAD-NJK, 2021 WL 950658, at *6-7 (D. Nev. Mar. 12, 2021); *Wilson v. Equifax Info. Servs., Inc.*, No. 2:19-cv-00055-RFB-NJK, 2020 WL 2771184, at *4 (D. Nev. May 27, 2020).

[4] *See also Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833-34 (7th Cir. 2004), *abrogated on other grounds*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995); *Rumbough v. Comenity Capital Bank*, No. 6:16-cv-1305-Orl-18GJK, 2017 WL 11503452, at *2 (M.D. Fla. Oct. 30, 2017); *Seckinger v. Equifax Info. Servs., LLC*, No. CV 415-304, 2018 WL 1511170, at *7 (S.D. Ga. Mar. 27, 2018); *Ricketson v. Experian Info. Sols., Inc.*, 266 F. Supp. 3d 1083, 1094-95 (W.D. Mich. 2017); *Marie E v. Experian Info. Sols. Inc.*, No. 5:17-cv-00-98-JMH, 2018 WL 2085221, at *4-5 (E.D.

Underlying the uncertain nature, as Equifax hints, are potentially serious standing issues for suing based on information not published to a third party. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) ("The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."). The statute demands this claim relate to preparing a consumer report. 15 U.S.C. § 1681e(b). So injuries would need to be traceable to that violation. *E.g., Crowder v. Andreu, Palma, Lavin & Solis, PLLC*, No. 2:19-cv-820-SPC-NPM, 2021 WL 1338767, at *7-8 (M.D. Fla. Apr. 9, 2021). While simple inaccuracies in Riley's file may be relevant to his separate § 1681i claim, they don't necessarily provide him standing on the credit-reporting issue. *See Ramirez*, 141 S. Ct. at 2208 ("And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."). The lack of briefing only buttresses the decision this need not be addressed.

But if the Court must do so, there is no indication from the record that the 2018 Letter was in fact the consumer report required by § 1681i(a)(6)(B)(ii).[5] A reinvestigation notice may qualify as a consumer report.

---

Ky. Feb. 27, 2018); *Letren v. Trans Union, LLC*, No. PX 15-3361, 2017 WL 445237, at *8 (D. Md. Feb. 2. 2017) (collecting cases).

[5] Again, Riley has not made this argument. It would need to be liberally construed on behalf of a represented party. The Court does not believe such treatment is appropriate. But it makes the following ruling in the interest of caution.

*See Nunnally*, 451 F.3d at 771-72, 776.  But Equifax was free to provide a separate consumer report to Riley.  *See* 15 U.S.C. § 1681i(a)(6)(B) (demanding a consumer report "[a]s part of, or in addition to," the required notice).  Put another way, there is no way to say the 2018 Letter is a consumer report rather than a mere reinvestigation notice.  *See Nunally*, 451 F.3d at 774 (noting a CRA can provide a consumer report "either (1) as part of the written document that is the notice of the results of the reinvestigation or (2) in a separate document").  Equifax says the 2018 Letter is not a consumer report under the statute.  And even if that means Equifax did not provide a consumer report at all, that would violate § 1681i(a)—not § 1681e(b).

In short, the 2018 Letter is not a consumer report to support Riley's credit-reporting claim.

### 2. Negligence

With that settled, Riley still contends Equifax violated § 1681e(b) by reporting duplicate tradelines.  Because there is a genuine dispute of material fact for the jury to resolve on negligence, the Court denies summary judgment.

An Equifax employee detailed the company's policies and procedures for reviewing data to ensure duplicate tradelines are not reported.  Riley offers nothing to call those procedures into doubt or suggest they did not occur.  Nor has Riley shown Equifax ever reported *identical* tradelines.  Riley does,

however, point to a consumer report Equifax prepared reflecting two tradelines for the Debt.  (Doc. 70-1).

While this report shows both tradelines, they have differences.  Most notably, the tradelines have different open dates—making them not duplicates under Equifax's policies.  But that's not all.  The tradelines have different reporting dates, derogatory payment dates, terms, last late dates, and dates of last activity.  Even though there are differences, the Court cannot resolve the dispute.  Whether Equifax followed reasonable procedures here is a question for the jury to resolve.  *See Losch*, 995 F.3d at 944 ("Whether a [CRA] acted reasonably under the FCRA 'will be a jury question in the overwhelming majority of cases.'" (quoting *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991))).

"The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances." *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972, 975 (M.D. Fla. 1985) (citation omitted).  This inevitably "involves weighing the potential harm from inaccuracy against safeguarding against the inaccuracy." *Lee v. Sec. Check, LLC*, No. 3:09-cv-421-J-12TEM, 2010 WL 3075673, at *9-13 (M.D. Fla. Aug. 5, 2010).  CRA "procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable." *Losch*, 995 F.3d

at 945. This makes sense given the millions of accounts CRAs handle daily. *Id.* "But on the flip side of the same coin, when a [CRA] has been notified of potentially inaccurate information in a consumer's credit report, it is in a very different position than one who has no such notice." *Id.* (cleaned up). "That's because once a claimed inaccuracy is pinpointed, a [CRA] conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information." *Id.* (cleaned up).

Importantly, this case is not one where Equifax had no possible notice. Riley first notified Equifax of the duplicate tradelines in 2019. Before that, however, Riley requested Equifax reinvestigate those tradelines. It did so— sending Riley the 2018 Letter to confirm several changes. Yet the 2018 Letter showed the tradelines as identical. And even though those tradelines met Equifax's policy for duplicates, apparently Equifax did not catch it. True, at that time, the tradelines were apparently reporting with different open dates. (Doc. 63-1 at 21). And by his own admission, Riley did not first complain about duplicate accounts until 2019. *E.g.*, (Doc. 62-1 at 2). But this is not a situation in which Equifax had no possible notice of potentially duplication.[6] So viewed most favorably to each nonmoving party, Equifax's liability for a negligent

---

[6] If it were, the answer might be different. *Losch*, 995 F.3d at 945 n.6 (affirming summary judgment on a § 1681e claim to the extent that it relied on reports prepared before consumer notified CRA of the inaccuracy).

violation presents fact and credibility issues the Court cannot resolve at summary judgment. *See Cahlin*, 936 F.2d at 1156.

### 3. *Willfulness*

While Riley's negligence claim can go forward, his willful violation theory is another story. Even viewed most favorably to him, Riley cannot show Equifax willfully violated § 1681e(b).

"To establish a willful failure to comply with § 1681e(b), a plaintiff must show that the consumer reporting agency either knowingly or recklessly violated the statute." *Williams*, 947 F.3d at 745. Typically, recklessness means "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Burr*, 551 U.S. at 68 (cleaned up). A CRA "acts in reckless disregard of FCRA requirements if its 'action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'" *Williams*, 947 F.3d at 745 (quoting *Burr*, 551 U.S. at 69). So if a CRA's reading of the statute is "not objectively unreasonable" based on the plain language, caselaw, and agency guidance, its conduct is unlikely reckless. *Pedro v. Equifax Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (quoting *Burr*, 551 U.S. at 70).

Riley presents no evidence Equifax knowingly reported duplicate tradelines. Likewise, he offers no convincing argument Equifax's conduct

approached the level of recklessness necessary to impose liability. Even if Equifax negligently reported duplicate tradelines, Riley cannot show its policies run an "unjustifiably high risk" of violations. *See Burr*, 551 U.S. at 68. At most, the evidence supports an inference that Equifax was careless in its reporting; but FCRA requires more to find willfulness. *Younger v. Experian Info. Sols., Inc.*, 817 F. App'x 862, 870 (11th Cir. 2020). Equifax had policies in place to prevent reporting duplicate entries. Because the policies are not objectively unreasonable and Riley has not shown Equifax failed to follow them—here or elsewhere—the conduct is not willful under FCRA. *Id.* So Equifax is entitled to judgment on the willfulness theory.

## B. Reinvestigation Claim

Having granted and denied summary judgment on Riley's credit-reporting claim, the Court pivots to the other claim: § 1681i. As it turns out, the answer on this reinvestigation claim is similar.

If consumer disputes "the completeness or accuracy of any item" in their file, CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). Credit-reporting (§ 1681e(b)) and reinvestigation (§ 1681i(a)) claims are similar. *Losch*, 995 F.3d at 944. The difference is that reinvestigation claims focus on a consumer's file—rather than a report—so

plaintiff need not show CRA "prepared and distributed a report." *Id.* After receiving a dispute, CRA must "notify a person who provided information . . . if a consumer disputes the information's accuracy." *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n,* 942 F.3d 1200, 1212 (11th Cir. 2019); 15 U.S.C. § 1681i(a)(2)(A). At bottom, a reinvestigation "claim is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." *Cahlin,* 936 F.2d at 1160.

### 1. Negligence

Riley says Equifax's reinvestigation of the tradelines was negligent. So he wants summary judgment. Mostly, Riley relies on the Equifax's failure to send Ocwen an automated credit dispute verification form ("ACDV").

CRAs typically send ACDVs to providers of credit information ("furnishers") when consumers dispute information. *Marchisio v. Carrington Mort. Servs., LLC,* 919 F.3d 1288, 1299 (11th Cir. 2019). An ACDV summarizes the credit reporting and disputed information. This allows furnishers to reinvestigate and decide if "disputed information should be verified, modified, or deleted." *Id.* As part of its reinvestigation policies and procedures, Equifax sends ACDVs to furnishers when it cannot resolve the dispute based on consumer's dispute alone.

Equifax concedes it did not send an ACDV to Ocwen and should have done so per company policy. Nobody can say why an ACDV did not get sent. Equifax speculates the failure might have been because its employee misunderstood Riley's dispute. Whatever the reason, Equifax violated its own policies by not sending an ACDV. And more importantly, it does not appear Equifax contacted Ocwen at all. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301 (11th Cir. 2016) ("As part of this investigation, the CRA is required to notify the person or entity that furnished the information that the information has been disputed.").

While it is undisputed Equifax failed to contact Ocwen, FCRA does not impose strict liability on CRAs. *E.g.*, *Williams*, 947 F.3d at 745. So the fact an employee failed to contact the furnisher—on its own—is not enough for the Court to say its reinvestigation was per se unreasonable. *See Losch*, 995 F.3d at 944, 946. If it were, FCRA would become a strict liability scheme conferring an action for every violation regardless of CRA's conduct. Riley points to no persuasive authority supporting such a conclusion. *Cf. Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1099 (D. Ariz. 2003) (recognizing "§ 1681i does not impose strict liability on a" CRA).

Importantly, Equifax did apparently conduct a reinvestigation. And under its policies, the tradelines would not be considered duplicates because they had different open dates. There were significant other differences

between the tradelines: the balance due, date closed, date of last payment, date of last activity, and scheduled payment amount (among others). What's more, the 2019 Letter conveyed Riley's Ocwen account was reporting as a single entry at that time. In other words, there are facts going both ways on reasonableness and it is unclear whether Ocwen would have cleared up the dispute. So it is impossible to say the reinvestigation was unreasonable (as a matter of law) because Equifax did not contact Ocwen. *See Cahlin*, 936 F.2d at 1160 (noting a reinvestigation claim generally lies when CRA "could have discovered an error in a particular report through a reasonable investigation."). Riley more or less ignores the 2019 Letter, focusing on how the tradelines reported in the 2018 Letter. But his reinvestigation claim hinges on the file as it existed in 2019—when Riley first disputed the duplicate tradelines.

What's more, the factual accuracy of the tradelines is unsettled. Riley does not address this in his briefing. But as Equifax points out, the 2019 Letter shows one tradeline as closed and the other open. In other words, it's unclear how the credit reporting could be misleading (i.e., inaccurate) if the tradelines reflected the Debt in such a way. Riley bears the threshold burden to establish factual inaccuracy. *Cahlin*, 936 F.2d at 1156, 1160. On this record, the Court cannot resolve the matter. But the parties may raise the issue again after discovery on damages.

Viewed most favorably to Equifax, the evidence contains genuine issues of material fact precluding summary judgment.  *See Bruce v. First U.S.A. Bank, Nat'l Ass'n*, 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000) ("Whether a reasonable investigation has been conducted is generally a question of fact for the jury.").

### 2. Willfulness

Like above, while there is a genuine dispute on negligence, there is none on whether Equifax willfully violated § 1681i.  Even taking the evidence most favorably to Riley, no evidence supports the conclusion Equifax knowingly or recklessly violated FCRA.  *Williams*, 947 F.3d at 745.

As much as Riley argues Equifax's conduct was per se willful because it failed to send an ACDV, the Court disagrees.  Again, Riley basically argues for strict liability on willfulness with little to no support for such an interpretation. And it goes without saying, "a single inaccuracy, without more, does not constitute a willful violation of FCRA."  *E.g.*, *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016); *see also Williams v. First Advantage LNS Screening Sols., Inc.* (*Williams 1*), 238 F. Supp. 3d 1333, 1345-46 & 1345 n.13 (N.D. Fla. 2017), *reversed on other grounds*, 947 F.3d 735.  For that reason, the cases Riley relies on are unavailing.  Rather—properly oriented—Equifax's conduct must have been knowing or reckless.  *Burr*, 551 U.S. at 56-57.

Much of Riley's argument revolves around Equifax's reinvestigation procedures. But Riley misreads both the procedures and FCRA. To see why, walking through Equifax's policies is helpful.

First, an employee reviews a dispute, along with the consumer's file. If the employee can resolve the dispute, they do so by updating the file before notifying the furnisher. (Docs. 57-1 at 6; 63-1 at 4). While Riley challenges this procedure, FCRA specifically allows for it:

> If, after any reinvestigation . . . of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the [CRA] shall—
>
> (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
> (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

15 U.S.C. § 1681i(a)(5)(A). Apart from being permitted, Equifax's policy provides consumers greater protection—allowing clear disputes to be resolved quickly before going through the furnisher notice process.

Next, if the employee cannot resolve the dispute on the papers, notice goes out to the furnisher. Typically, Equifax provides notice through an ACDV. This is a common form of reinvestigation FCRA calls for:

> Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute . . . .

15 U.S.C. § 1681i(a)(2)(A); *see also id.* § 1681i(a)(5)(D).

Best the Court can tell, Riley faults Equifax because its procedures allow a brief investigation before sending furnisher notice. Yet nothing in § 1681i casts doubt on that procedure. The implied argument seems to be CRA must notify furnisher before doing anything else. Not so. FCRA simply demands that notice be sent to furnisher within five business days. 15 U.S.C. § 1681i(a)(2). And it is a reasonable reading of the statute to say CRA can delete or modify information, then notify furnisher within that time. 15 U.S.C. §§ 1681i(a)(2)(A), 1681i(a)(5)(A)(ii). What's more, Congress seemed to provide an expedited resolution process—where notice to furnisher may not even be required in all circumstances:

> If a dispute regarding an item of information in a consumer's file . . . is resolved in accordance with paragraph (5)(A) by the deletion of the disputed information by not later than 3 business days after the date on which [CRA] receives notice of the dispute from the consumer in accordance with paragraph (1)(A), then [CRA] shall not be required to comply with paragraphs (2), (6), and (7) with respect to that dispute . . . .

15 U.S.C. § 1681i(a)(8).  In other words, no statutory language dictates any issue with Equifax's procedures.

Crucially, Equifax admits its employee should have contacted Ocwen under its policies.  Riley thinks this is dispositive on willfulness.  But it isn't.  Once again, if it were, every FCRA violation would be willful.  The Supreme Court made clear liability extends to knowing violations or recklessly disregarding statutory duties.  *Burr*, 551 U.S. at 56-57.

Riley presents no evidence Equifax knowingly violated FCRA.  And Equifax has procedures in place to guard against duplicate reporting.  For the policies to constitute a reckless disregard, they would need to be objectively unreasonable under FCRA.  *Williams*, 947 F.3d at 745.  As explained, Equifax's procedures were not.  Notably, Riley presents no evidence of any other occurrences of Equifax not notifying furnishers of disputes or doing so late.  Nor does he cite any part of the record revealing Equifax's policies cannot coexist with its FCRA notice obligations.  Riley (more accurately counsel) mischaracterizes the evidence, saying Equifax's policies simply "suggest" it notify furnishers, make it "optional" to do so, and "defer" notice until some later time.  Yet the record does not support that interpretation of the policies.  For Riley to advance such an argument, he would need to present evidence on Equifax's policies.  Yet he didn't provide anything—leaving Equifax's declaration unrebutted.

Equifax's conduct may have been careless.  Even so, the record does not suggest its actions were willful FCRA violations.  *See Younger*, 817 F. App'x at 869-70 ("Although [CRA] admitted that, in addition to misclassifying [consumer's] dispute letter, [CRA] has misclassified other genuine letters under its policy, nothing in the record suggests [CRA] does so often enough for a jury to permissibly infer [CRA] ran an 'unjustifiably high risk' of violating its duty to reinvestigate." (quoting *Burr*, 551 U.S. at 68)).  So as above, Equifax is entitled to judgment on willfulness.

## C. Affirmative Defense

Finally, Riley moves for summary judgment on Equifax's only affirmative defense: failure to mitigate damages.  Riley argues he had no duty to mitigate damages because FCRA already accounts for that by requiring consumers to dispute credit reporting issues.  As the argument goes, since Riley made a dispute, no more duties existed.  In essence, he says there can never be a failure to mitigate affirmative defense in a FCRA case so long as the consumer first disputes the issue.  Not so.  There is no rule, as Riley suggests, that a CRA cannot raise a failure to mitigate defense.[7]

---

[7] *See, e.g., Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 318 (5th Cir. 2012); *Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 291 (S.D.N.Y. 2014); *Williams 1*, 238 F. Supp. 3d at 1352; *see Watson v. Caruso*, 424 F. Supp. 3d 231, 248 (D. Conn. 2019); *Nadeau v. Experian Info. Sols., Inc.*, No. 20-cv-1841(PJS/TNL), 2020 WL 7396588, at *5 (D. Minn. Dec. 17, 2020); *Strohbehn v. Access Grp., Inc.*, 292 F. Supp. 3d 819, 832 (E.D. Wis. 2017); *Notley v. Sterling Bank*, No. 3:06-CV-0536-G, 2007 WL 188682, at *5 (N.D. Tex. Jan. 24, 2017).

To the extent that Riley cites a single case to the contrary, the Court disagrees. *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1268 (N.D. Ala. 2011). *Brim* does not make the sweeping holding Riley imagines. Rather, it held the evidence in that case did not support a consumer's duty to mitigate. And on the theory pursued—different from the claims here—consumer had no duty to mitigate. It does not, however, suggest a CRA can never assert a failure to mitigate defense.

While Riley is wrong this defense is barred, he's right it goes to damages. Because discovery on that matter was bifurcated, whether Riley mitigated damages is an issue left for another day.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment as to Liability (Doc. 54) is **DENIED**.

2. Defendant's Cross-Motion for Partial Summary Judgment as to Liability (Doc. 57) is **GRANTED in part**.

   a. Defendant's Motion is **GRANTED** as to willfulness.

   b. The balance of the Motion is **DENIED**.

3. The parties must **CONTACT** Judge Mizell's Chambers to arrange for any status conference on how the case will proceed given the outstanding discovery on damages.

**DONE** and **ORDERED** in Fort Myers, Florida on August 24, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record